UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| Bassam Assaf, M.D., | ) | |
|          Plaintiff | ) | |
| | ) | |
| v. | ) | Case No. 10-4021 |
| | ) | |
| Trinity Medical Center, | ) | |
|          Defendant | ) | |

**ORDER AND OPINION**

Now before the Court are two motions: Plaintiff's Motion for Reconsideration and Defendant's Motion to Clarify or Stay. In addition to these motions, the parties raised a matter in their Trial Briefs that requires resolution. As stated herein, the Motion for Reconsideration (#46) is DENIED. Because the Court *sua sponte* vacates a portion of the October 4, 2011 Order, the Motion to Clarify or Stay (#44) is FOUND AS MOOT. The ruling below on the issue raised in the Trial Briefs makes a trial in this matter unnecessary.

**MOTION FOR RECONSIDERATION**

On October 4, 2011, an Order was entered, granting in part and denying in part the Defendant's Motion in Limine. In pertinent part, the Order barred "evidence of Dr. Assaf's claim for lost professional fees," striking that element of the prayer for damages. Dr. Assaf now asks for reconsideration of that part of the Order, asserting that his failure to provide exact calculation of his damages was "substantially justified or harmless."

Despite Dr. Assaf's newly-filed affidavit in which he describes how in the bankruptcy proceedings of his former employer impeded his ability to obtain the documents he needed to support this claim. At no time during the period allocated for discovery, however, did Dr. Assaf

1

make the Court aware of his difficulties or ask the Court to extend the discovery deadline so he could obtain the requisite documentation. Neither did he file a motion to compel during discovery. "Justification" implicitly includes diligence, and having failed to utilize the tools that were available to him in a timely fashion, I conclude that diligence on this issue was lacking. His failure to obtain the requisite documentation was therefore not substantially justified.

Nor was it harmless. As the original Order noted, prejudice to Defendant arose not simply from Dr. Assaf's failure to provide a *computation* of damages, as Dr. Assaf suggests in this motion. Prejudice instead flowed from Dr. Assaf's failure to obtain and provide any documentary evidence to support his claim for this type of damages. His failure to do so leaves the Defendant in the precarious position of not being able to evaluate or contest any calculation that stemmed from those documents. That failure and the resulting prejudice was not and is not harmless.

Dr. Assaf tries to distinguish Dynegy Marketing and Trade v. Multiut Corp., 648 F.3d 506 (7th Cir. 2011), a case on which the Order relied. He argues that, unlike the defendant in Dynegy and contrary to what this Court held in the Order, Trinity was well aware of where "his numbers were coming from," because those numbers could be derived from records that Trinity had in its own possession. That misses the point entirely. It is Plaintiff's burden to (1) calculate his damages; (2) document his calculation; and (3) provide that information to Defendant in a timely fashion. This burden is not in any way ameliorated by Trinity's awareness that Dr. Assaf was asserting a right to this type of damages, and the general awareness does not somehow transfer the burden to Trinity to try to figure out how to value Dr. Assaf's damages.

The Motion to Reconsider [#46] is denied.

## MOTION TO CLARIFY OR STAY

In this Motion, Trinity asks this Court to clarify whether the October 4 Order on its Motion in Limine was intended to be a final order for equitable relief, enforceable immediately, or an interim Order not final until resolution of the issues remaining in this Case. If the former, Trinity asks that the Order be stayed until it has the opportunity to appeal.

The portion of the Order at issue arose from the Court's finding that the February 22 Settlement Agreement was enforceable and that Dr. Assaf had sought the equitable relief of specific performance, which in this case meant reinstatement as Neuroscience Director for 2011. In the October 4 Order, the Court concluded that specific performance was an appropriate remedy.

There is no way to interpret the Court's ruling on a motion in limine as a "final and appealable order." The October 4 Order included a ruling on one issue; it certainly did not resolve all issues that remained after the the Order on summary judgment was entered, and that later Order explicitly stated that it was not a final and appealable order. After entry of these two Orders, Dr. Assaf filed no motion seeking entry of a final judgment pursuant to Fed.R.Civ.P. 54(b), and any such motion would have likely been denied, given that the question of damages and other possible questions remained unresolved. Until such time as a final judgment is entered in this case, the interim orders are not final and are therefore not enforceable at this time.

More importantly, however, as the Court reviewed the Motion to Clarify that is now pending, it necessarily reviewed its earlier Order and the basis for that Order. The Court has now *sua sponte* reached the conclusion that the earlier Order on the motion in limine was incorrect on this question. That Order relied on non-binding cases - cases from Oregon, Ohio and Michigan - and on cases involving entirely different legal frameworks - such as a fair housing case. The significant import of the Illinois state cases on this question of Illinois law was improperly discounted.

3

A review of those Illinois cases makes it very clear that Illinois regularly and routinely applies black letter law holding that personal services contracts, such as employment contracts, are not ordinarily enforced by specific performance: "[A] court should not compel an employee to work for his employer, nor compel an employer to retain an employee in his service." Zannis v. Lake Shore Radiologists, Ltd., 392 N.E.2d 126, 128-29 (Ill.App.1979). Accord, Chady v. Solomon Schechter Day Schools, 645 N.E.2d 983, 986 (Ill.App.1995)(common law prohibition against specific performance as a remedy for breach of employment contract rebuttable only by statutory right to employment); Hess v. Clarcor Inc., 603 N.E.2d 1262, 1275 (Ill.App.1992) (general rule that a court will not compel an employer to retain an employee in its service); Kurle v. Evangelical Hosp. Ass'n, 411 N.E.2d 326, 332 (Ill.App.1980)(absent statutory duty, an employer cannot be compelled to reinstate a discharged employee for personal service.); Bloch v. Hillel Torah North Suburban Day School, 426 N.E.2d 976, 977 (Ill.App.1981)(proper remedy for breach of personal services contract is an action for money damages, not specific performance). See also, Sampson v. Murray, 415 U.S. 61, 88-92 (1974) (absent a statutory requirement of reinstatement or truly extraordinary circumstances, a court will not compel a governmental employer to retain an employee or reinstate a discharged employee); North American Financial Group Ltd v. S.M.R. Enterprises, Inc., 583 F. Supp. 691 (D.C. Ill.1984) ("hornbook law that a contract for personal services will not be specifically enforced as contrary to public policy," applying Illinois law).

In Zannis, supra, the employment contract in question expressly stated that it was enforceable by specific performance. Nonetheless, the court declined to award such a remedy for two reasons. First, the court acknowledged that it would be "impractical, if not impossible, for a court to provide the continuous supervision necessary to enforce this kind of order for specific performance." 392 N.E.2d at 129. Second, the court commented that personal services contracts "require a relationship

4

of cooperation and trust," clearly lacking where there has been acrimonious litigation between them. Id.. As a result, said the Zannis court, it is a matter of public policy that courts decline to compel an employer to hire or retain someone against its wishes.

This Court should not have refused to apply this vast array of authority simply because the Settlement Agreement contemplated Dr. Assaf's re-employment as a Director. That part of the Order of October 4 is therefore vacated. The parties should realize that the Court's error might well have been avoided if this question had been properly raised as part of a dispositive motion. The briefing would have certainly been more thorough and the Court's attention more focused.

That said, the error must be corrected. Therefore, the portion of the Order (#41) dealing with Specific Performance is hereby VACATED. The Plaintiff's prayer for specific performance in Count IV is DENIED. As a result of this Order, it is no longer necessary to clarify the Order or stay its effect, so the Defendant's motion is FOUND AS MOOT.

**TRIAL BRIEFS**

The Settlement Agreement into which these parties entered on February 26, 2009, and which this Court has found to be binding (Order of Aug. 15, 2011) included the provision that Dr. Assaf's "Directorship position will continue until December 31, 2011. Automatic yearly renewal as per original epilepsy contract." That "original epilepsy contract" required 90 days notice if either side did not intend to renew the contract.

On September 6, 2011, Trinity's Vice-President of Hospital Operations sent a letter to Dr. Assaf. In pertinent part, this letter reads:

> [I]f Judge Gorman's ruling stands, your sole remedy is a claim for damages for breach of the Settlement Agreement. In the event, however, that Judge Gorman rules that there is an employment agreement in force between Trinity and you or orders Trinity to sign such an employment agreement with you, this notice will advise you of Trinity's intent with regard

5

> to such agreement.
>
> \* \* \* \* \*
>
> Trinity therefore provides you with this notice that it does not intend to renew any employment agreement between it and you found to exist or ordered to be signed by Judge Gorman or any appellate court. Any employment agreement shall terminate effective December 31, 2011 and shall not automatically renew.

Plaintiff's counsel responded by sending a letter to Trinity's counsel that included the following statement: "A party that has breached an employment agreement under Illinois Law cannot in turn selectively enforce terms in the contract that are to its advantage. Therefore, Trinity Medical center's attempt to terminate the employment contract is null and void."

This statement is argued in Plaintiff's trial brief.

In order to evaluate this argument, a brief summary of the procedural posture of this case is necessary. Following Trinity's attempt to terminate the 2005 Medical Director's Agreement ("MDA"), Dr. Assaf filed discrimination charges with the EEOC and the Illinois Human Rights Commission. He also filed a state court lawsuit on February 1, 2010; that case was removed to this Court on February 17, 2010.

Dr. Assaf's original complaint alleged that Trinity had breached the 2005 MDA (Count I); that Dr. Assaf was a third party beneficiary to a contract between Trinity and Homeland Security regarding his employment status (Count II); and that Trinity violated the Illinois Wage Payment and Collection Act. Count II was dismissed on a Rule 12(b)(6) motion (Doc. #5).

Despite the pendency of the litigation, the parties continued discussions that ultimately resulted in a Settlement Agreement signed on February 26, 2010. Pursuant to obligations contained in that Agreement, Dr. Assaf then dismissed the pending EEOC and IHRC charges. This did not resolve the dispute, however, because the parties differed about the intent of the Settlement

Agreement. Trinity's answer to the complaint (Doc.#6) included a counter-claim against Dr. Assaf for breach of the Feb. 26 Settlement Agreement, based on his refusal to sign a new MDA. In his "Reply" to the complaint (Doc. #9), Dr. Assaf added Count IV, alleging that Trinity had breached the Feb. 26, 2009 Settlement Agreement.

Dr. Assaf then filed a motion for summary judgment as to Count IV, raising four arguments: (1) that the Settlement Agreement was binding on Trinity; (2) that the MDA Trinity wanted him to sign was unenforceable; (3) that he was entitled to judgment on the counter-claim; and (4) that Dr. Assaf was entitled to his attorney's fees under the Settlement Agreement. In ruling on the motion for summary judgment, the Court found that the February 26 Settlement Agreement was binding on the parties; and that the MDA as proposed by Trinity was unenforceable. The summary judgment order made no ruling on the attorney's fees issue. With respect to its counter-claim, Trinity moved for dismissal (#21), and that motion was granted (Text Order of 6/6/2011). Thereafter, on October 4, this Court entered another order granting Trinity's motion to dismiss Counts I and III of the complaint.

In Dr. Assaf's Trial Brief, he contends that, because Trinity is in breach of the Settlement Agreement, Trinity cannot enforce the termination provision referenced therein. Settlement agreements are governed by contract law. In re Marriage of Schmidt, 684 N.E.2d 1355, 1359 (Ill.App.1997); City of Chicago Heights v. Crotty, 679 N.E.2d 412, 413 (Ill.App.1997). Under contract law, a party in breach may not enforce the contract. Goldstein v. Lustig, 507 N.E.2d 164, 167–68 (Ill.App.1987).

A party seeking to enforce a contract has the burden of proving he has substantially complied with all material terms of the agreement. Id. at 168. A party who materially breaches a contract cannot take advantage of the terms of the contract that benefit him, nor can he recover damages from

7

the other party to the contract. Id.. Dr. Assaf relies on Goldstein and several other cases for the proposition that Trinity's breach of the Settlement Agreement prevents it from invoking the termination provision of that Agreement. Defendant responds that there are significant factual differences between the case at bar and the cases on which Plaintiff relies.

In James v. Lifeline Mobile Medics, 792 N.E.2d 461, 464 (Ill.App.2003), the plaintiff sued her employer for retaliatory discharge. She obtained a jury verdict in her favor. After she began execution on that judgment, the employer filed an appeal. Thereafter, the parties agreed to settle the case. The employer agreed to make 2 payments, one of $200,000 and another of $25,000, about $28,000 less than the judgment. Neither payment was made. The plaintiff again began execution of judgment, and the trial court entered a ruling purporting to reform the settlement agreement. Defendant eventually issued a check that bounced. A cashier's check was then issued but only for the amount of the settlement, not for the amount of the judgment. Plaintiff asked for an order directing payment of the balance, and the trial court refused.

On appeal, the trial court was reversed. In that context, the appellate court specifically found, in pertinent part, that the employer was not entitled to rely on the settlement agreement because it had breached that agreement by not making the required payments. The plaintiff was therefore entitled to the entire amount of the judgment.

James is distinguishable from the case at bar. Most importantly, in James the parties did not settle the merits of their dispute. Those merits were resolved by trial and finalized by judgment. The "settlement" was actually a compromise of the dollar amount of the judgment; the judgment was neither vacated nor altered by the settlement, so it remained fully enforceable by the Plaintiff. Plaintiff did not seek to enforce the settlement agreement once it was breached. She simply reinstated

8

her efforts to enforce the judgment. Under those circumstances, it makes perfect sense to bar the breaching party from enforcing the compromise agreement.

Unlike James, Trinity and Dr. Assaf settled the merits of the underlying claim that termination of the 2005 MDA was discriminatory. There is no judgment reflecting the terms of that agreement, nor is there any ruling by this Court that Trinity breached either the underlying MDA or the resulting Settlement Agreement. At this point in time, it would be premature to characterize as "breaches" or "compliance" the conduct of the parties vis-a-vis the terms of the Settlement Agreement. Neither party has any absolute rights in this case at this time.

Moreover, a review of the cases on which Dr. Assaf relies demonstrates that they provide no support for his position on this question. For example, in Goldstein, 507 N.E.2d 164, a case in which the plaintiff, a dentist, entered into an employment contract with a dental corporation. The contract provided that if the dentist was terminated for cause, he was entitled only to benefits specified in paragraph 8(b), but if he resigned, he would be entitled to more generous benefits described in additional paragraphs. The dentist participated in insurance fraud and wanted advice about how to maximize his benefits. He took his employment contract to an attorney, defendant Lustig, and told him that the corporation had valid grounds to terminate the contract. Lustig advised that it would not matter contractually whether he waited to be fired or resigned; he suggested that the dentist wait to be fired and then bring litigation. The dentist took this advice; he was fired and he filed suit against the corporation for wrongful discharge. During the litigation, the attorney advised him to settle the case. A consent decree, mutual release and settlement agreement were executed, and the dentist obtained significant relief, although less than he would have received under the more generous "resignation" provision of his contract.

Plaintiff then sued Lustig for professional malpractice, claiming that Lustig's original advice - that it wouldn't matter if he resigned or waited to be fired - was negligent. In reaching the conclusion that no malpractice had occurred, the court found *inter alia* that furtherance of an insurance fraud scheme constituted a material breach by the dentist. Hence, it mattered not whether the dentist had resigned instead of being fired, because as a breaching party he would not have been entitled to enforce his contract to receive the resignation benefits.

Once again, as in James, the "settlement" included a consent judgment. Moreover, from the very outset, the dentist had acknowledged that his conduct gave the employer cause to terminate the employment contract. There is nothing of the sort in the case at bar. The facts in Goldstein limit its usefulness here.

In Advance Iron Works Inc. v. John Edwards Constr. Co., - F. Supp.3d -, Case No. 02C0014, 2004 WL 2044123 at *8, Sept. 9, 2004 (N.D.Ill.), the court found that a party who had breached a contract could not recover monetary damages from the other party whose contractual performance was excused by virtue of the breach. Similarly, Wild Oats Mkts, Inc. v. Plaza Acquisition Inc., - F.3d -, Case No. 87C5265, 2000 U.S. Dist. Lexis 20136, Dec. 18, 2000 (N.D. Ill.), the dispute arose from parties to a lease attempting to obtain monetary damages from each other. Plaintiff, the breaching party, had made improvements to the property, opened a store and then, due to low sales, moved out. As is pertinent here, the court denied plaintiff's claim for the cost of improvements, finding that this would have allowed plaintiff to "selectively enforce" those provisions of the lease that were advantageous.

In both of these cases, a party in breach of a contract was denied the opportunity to obtain monetary damages from the other contracting party. Trinity, having dismissed its counter-claim, is

not trying to obtain damages, monetary or otherwise, from Dr. Assaf. The extent of the dispute raised in the Trial Briefs is about Trinity's effort to limit the duration of its relationship to Dr. Assaf under the terms of Settlement Agreement. That difference is significant, in and of itself.

To summarize, there are two significant differences between the cases on which Dr. Assaf relies and the case now before this Court: the fact that the Settlement Agreement is not backed up by a judgment, and the fact that Trinity has not been found in breach of the Settlement Agreement. These distinctions lead me to conclude that the rule of law on which Dr. Assaf relies does not apply to the facts presented in this case. Having sought and obtained a finding that the Settlement Agreement is binding, Plaintiff cannot now be heard to complain when his opponent invokes the terms of that document.

Trinity's notice to Dr. Assaf that it did not intend to renew the MDA for calendar year 2012 was timely under the Settlement Agreement. As a result, the legal relationship between these parties terminates on December 31, 2011. This conclusion is entirely consistent with the parties' intent as expressed in the provisions of the Settlement Agreement. The parties agreed explicitly that the relationship would continue through the end of 2011 with renewals (and, as previously ruled, terminations) pursuant to the terms of the 2005 MDA. There was no meeting of the minds that the relationship would continue beyond the end of 2011, and Trinity's decision to terminate the relationship at the earliest possible time is not in any way inconsistent with the Settlement Agreement.

Knowing the end date of the legal relationship between these parties means that all issues of damages are simply a matter of application of the terms of the Settlement Agreement. The parties agreed that Dr. Assaf was to be paid certain amounts and that his employment and medical files

would be expunged of any negative information. Dr. Assaf agreed that he would release Trinity from all charges and claims, which would of course include this lawsuit.

## CONCLUSION

This entire dispute demonstrates what can go wrong when two parties settle a complicated legal dispute without the benefit of counsel. The difficulties in resolving the issues in this case were not the fault of the attorneys, and neither Dr. Assaf nor Trinity have anyone to blame but themselves if the outcome of this matter is not to their liking.

As explained herein, the Motion for Reconsideration (#46) is DENIED. Because the Court *sua sponte* vacates a portion of the October 4, 2011 Order, the Motion to Clarify or Stay (#44) is FOUND AS MOOT. The issue raised in the Trial Briefs results in dispositive findings that make a trial in this matter unnecessary.

At the status conference on Dec. 15, 2011, the parties shall be prepared to present to the Court a proposal for entry of judgment and any other steps necessary to conclude this matter.

ENTERED ON December 7, 2011

s/ John A. Gorman

JOHN A. GORMAN
UNITED STATES MAGISTRATE JUDGE